## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF SOUTH DAKOTA
ROOM 211
FEDERAL BUILDING AND U.S. POST OFFICE
225 SOUTH PIERRE STREET
**PIERRE, SOUTH DAKOTA  57501-2463**

**IRVIN N. HOYT**                                              TELEPHONE (605) 945-4490
BANKRUPTCY JUDGE                                                      FAX (605) 945-4491

May 7, 2007


Clair R. Gerry, Esq.
Attorney for Debtor
Post Office Box 966
Sioux Falls, South Dakota  57101-0966

Stephanie C. Bengford
Assistant United States Attorney
Attorney for United States Department
 of Veterans Affairs
Post Office Box 3303
Sioux Falls, South Dakota  57101-3303

        Subject:  *In re Julie A. Squires*
                  Chapter 13; Bankr. No. 05-10433

Dear Counsel:

    The matter before the Court is confirmation of Debtor's
Chapter 13 plan, to which both Chapter 13 Trustee Dale A. Wein and
the United States Department of Veterans Affairs have objected.
This is a core proceeding under 28 U.S.C. § 157(b)(2).  This letter
decision and accompanying order shall constitute the Court's
findings and conclusions under Fed.Rs.Bankr.P. 7052 and 9014.  For
the reasons discussed below, confirmation of Debtor's Chapter 13
plan will be denied.

    **Summary**.   In April 1997, Julie A. Squires ("Squires")
submitted an application for Veterans Improved Pension benefits.
In her application, she stated her husband, Lee Squires, had no
income and a net worth of only $75.00.  The Department of Veterans
Affairs ("Veterans Affairs") approved her application, and Squires
received a total of $33,510.00 from Veterans Affairs from June 1997
to July 2000.

    In July 2000, Veterans Affairs discovered Squires's husband
had income and assets substantially greater than Squires had
disclosed in her application and demanded repayment of the pension
benefits Squires had received.  Squires made only one voluntary
payment of $200.00.  Veterans Affairs then filed a civil complaint
against Squires in the United States District Court.  Squires did
not answer the complaint, and Veterans Affairs was granted a

Re:  *Julie A. Squires*
May 7, 2007
Page 2


default judgment for $33,310.00 plus interest.  Between January 2002 and March 2003, Squires made voluntary payments totaling $2,800.00.

In March 2002, Squires submitted another application for Veterans Improved Pension benefits.  In this second application, she stated her husband had no income and a net worth of $100.00. Veterans Affairs approved her application, and Squires received an additional $5,334.00 from Veterans Affairs.

In May 2003, Squires submitted yet another application for Veterans Improved Pension benefits.  In this third application, she stated her husband had no income and a net worth of $0.00. Veterans Affairs again approved her application, and Squires received an additional $5,430.00 from Veterans Affairs.

Squires and her husband filed a petition for relief under Chapter 7 of the Bankruptcy Code on June 23, 2005.  In the schedules and statements they filed with their petition, Squires and her husband stated they had combined income of $22,024.00 in 2003 and $32,320.00 in 2004, and further stated her husband had monthly net income of $2,325.00.

On September 26, 2005, Veterans Affairs filed an adversary complaint against Squires, seeking a determination that her liability for the benefits she received was nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and (B), 523(a)(4), and 523(a)(6).  The following day, Squires and her husband received a Chapter 7 discharge, which discharged all their unsecured debts other than the debt Squires owed to Veterans Affairs.  Their Chapter 7 case remained open until December 2, 2005.

In the meantime, on October 14, 2005, Squires filed a second petition for relief, this time under Chapter 13 of the Bankruptcy Code.  Ten days later, she filed an answer to Veterans Affairs' adversary complaint in her still-pending Chapter 7 case, raising as an affirmative defense the automatic stay imposed by her Chapter 13 filing.  On October 27, 2005, the Court entered an order conditionally dismissing Veterans Affairs' adversary complaint.[1]

---

[1] The order provided that if the instant Chapter 13 case were dismissed, Veterans Affairs could move to reopen the adversary proceeding and further provided that if the instant Chapter 13 case were converted to Chapter 7, Veterans Affairs could file another nondischargeability complaint in the converted case, with no prejudice arising from the Court's dismissal of the adversary proceeding in Squires and her husband's Chapter 7 case.

Re:  *Julie A. Squires*
May 7, 2007
Page 3


          In her Chapter 13 plan, Squires proposed to make monthly
payments of $55.00, $5.00 of which was to be paid to the Chapter 13
trustee for his statutory fee, and $50.00 of which was to be paid
to her attorney for the first 27 months of the plan and to Yamaha
Customer Service on a claim secured by her piano for the remaining
21 months of her plan.  Squires proposed no payments to Veterans
Affairs, her only unsecured creditor.  Both the Chapter 13 trustee
and Veterans Affairs objected to the proposed plan.

          At the confirmation hearing, the Court heard the testimony of
Squires and Debra Clow, an employee of Veterans Affairs, and
received a variety of exhibits, including the applications for
Veterans Improved Pension benefits referred to above.  At the
conclusion of the hearing, the Court found the proposed plan was
not feasible.  The Court based this finding on the schedules and
statements filed by Squires, which indicated her monthly expenses
exceeded her monthly income, and her testimony that without her
non-filing husband's contributions, which he was under no legal
obligation to make, she would not be able to fund the plan.
Accordingly, the Court denied confirmation.

          At the request of the parties, the Court also agreed to
receive proposed findings of fact and conclusions of law on the
question of whether Squires had proposed her plan in good faith.
Squires and Veterans Affairs both submitted such proposed findings
and conclusions, and the matter was taken under advisement.

          **Discussion.**  A Chapter 13 plan must be "proposed in good faith
and not by any means forbidden by law."  11 U.S.C. § 1325(a)(3).
The analysis of what constitutes "good faith" under § 1325(a)(3)
has evolved over the years.

          Prior to the Bankruptcy Amendments and Federal Judgeship
          Act of 1984, Pub.L. No. 98-353, 98 Stat. 333
          (1984)["BAFJA"], our analysis focused upon "whether the
          plan constitutes an abuse of the provisions, purpose or
          spirit of Chapter 13."  *In re Estus*, 695 F.2d 311, 316
          (8th Cir. 1982).  This required looking to the totality
          of circumstances to discern whether good faith existed,
          a task aided by the *Estus* court listing a number of
          factors it considered relevant to this analysis.

*Handeen v. LeMaire* (*In re LeMaire*), 898 F.2d 1346, 1348 (8th Cir.
1990).  That analysis changed with BAFJA's addition of 11 U.S.C.
§ 1325(b), which permitted Bankruptcy Courts to confirm a Chapter
13 plan if the debtor committed all the debtor's disposable income
for three years to making payments under the plan.

Re:  *Julie A. Squires*
May 7, 2007
Page 4


In *Education Assistance Corp. v. Zellner*, 827 F.2d 1222 (8th Cir. 1987), we considered the effect of the new section 1325(b) on the *Estus* analysis of good faith. We stated that the new section's "ability to pay" criteria subsumed most of the *Estus* factors and thus narrowed the focus of the good faith inquiry. We described the narrower focus as depending upon "whether the debtor has stated his debts and expenses accurately; whether he has made any fraudulent misrepresentation to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code.

*LeMaire*, 898 F.2d at 1349 (citations omitted). However, the Court must still consider the "totality of circumstances."

Although *Zellner* modified the good faith determination in response to the new section 1325(b), it is recognized that *Zellner* preserved the traditional "totality of circumstances" approach with respect to *Estus* factors not addressed by the legislative amendments. Thus, in considering whether [Debtor] proposed his plan in good faith, factors such as the type of debt sought to be discharged and whether the debt is nondischargeable in Chapter 7, and the debtor's motivation and sincerity in seeking Chapter 13 relief are particularly relevant.

*Id.* (citations omitted).

In the instant case, both those "particularly relevant" factors amply support a finding that Squires did not propose her plan in good faith.[2]  Squires's counsel conceded, for the purposes of the confirmation hearing, the debt owed to Veterans Affairs would be nondischargeable in Chapter 7.

Having heard her testimony and having observed her demeanor while on the witness stand, the Court is firmly convinced that in seeking Chapter 13 relief, Squires was motivated by two things. First, she wanted to accomplish in Chapter 13 what she had not accomplished – and indeed could not accomplish – in her then still pending Chapter 7 case, *i.e.*, a discharge of her obligation to Veterans Affairs.  Second, she wanted to file the instant Chapter

---

[2] The Court reviewed and considered both the remaining *Estus* factors and the more narrowly focused *Zellner* factors. However, given the facts and circumstances of this case, the Court finds none of those other factors, either individually or taken together, outweighs the two factors highlighted in *LeMaire*. *Cf. LeMaire*, 898 F.2d at 1351 n.7.

Re:  *Julie A. Squires*
May 7, 2007
Page 5


13 before October 17, 2005, the effective date of the Bankruptcy
Abuse Prevention and Consumer Protection Act of 2005, under which
fraud-based claims such as the one held by Veterans Affairs would
no longer be dischargeable in Chapter 13.   *See* 11 U.S.C.
§ 1325(a)(2).  Neither of these motivations evidences good faith.

     Likewise, nothing in either her plan or her testimony persuades
the Court Squires was sincere in seeking Chapter 13 relief.  She
clearly had no real desire to repay Veterans Affairs' claim.  She
did not even propose a payment to Veterans Affairs – her lone
unsecured creditor – in her plan.  *Cf. In re Mattson*, 241 B.R. 629,
637 (Bankr. D. Minn. 1999) (citations therein) ("The bottom line
for most courts, even those outside of [the Eighth] Circuit, is
whether the debtor is attempting to thwart his creditors or is
making an honest attempt to repay them.").  Moreover, even if she
truly wished to repay Veterans Affairs, Squires does not have the
present ability to fund a plan.  Filing a Chapter 13 case was
therefore pointless and served no legitimate purpose.

     Finally, the Court cannot overlook the facts and circumstances
giving rise to Veterans Affairs' claim against Squires.  *LeMaire*,
898 F.2d at 1352 (citations omitted) ("While pre-filing conduct is
not determinative of the good faith issue, it is nevertheless
relevant.").  Misstating a spouse's income and net worth is
certainly not as serious as shooting someone, as the debtor in
*LeMaire* did.  However, Squires's actions in misstating her
husband's income and net worth, not once, but three times over the
course of several years – the last time after judgment had been
entered against her for misstating his income and net worth the
first time – provide further support for the Court's finding that
Squires did not propose her plan in good faith, particularly in the
absence of any credible evidence of her good faith.  *See id.*

     The Court's finding that Squires did not propose her plan in
good faith is also consistent with the policies underlying the
Bankruptcy Code, as espoused by the Eighth Circuit Court of
Appeals.

          [T]he primary purpose of the bankruptcy statute . . . is
     the collection and distribution of the debtor's estate to
     his creditors.  A secondary purpose is to discharge the
     debtor's financial obligations and is "designed to give
     the honest debtor the opportunity to reinstate himself in
     the business world; it is not intended to be available to
     a dishonest debtor."

*Id.* at 1352 (citations omitted).  Squires was undeniably less than
honest in her dealings with Veterans Affairs prior to the filing of
her bankruptcy petitions.  Under these circumstances, the Court

Re:  *Julie A. Squires*
May 7, 2007
Page 6


cannot condone her attempt to now manipulate the Bankruptcy Code to
obtain relief not intended by Congress.

> We hold that with section 1325(a)(3) Congress intended to
> provide bankruptcy courts with a discretionary means to
> preserve the bankruptcy process for its intended purpose.
> Accordingly, whenever a Chapter 13 petition appears to be
> tainted with a questionable purpose, it is incumbent upon
> the bankruptcy courts to examine and question the
> debtor's motives.  If the court discovers unmistakable
> manifestations of bad faith, as we do here, confirmation
> must be denied.

> Unmistakable manifestations of bad faith need not be
> based upon a finding of actual fraud, requiring proof of
> malice, scienter or an intent to defraud.  We simply
> require that the bankruptcy courts preserve the integrity
> of the bankruptcy process by refusing to condone its
> abuse.

*Shell Oil Company v. Waldron* (*In re Waldron*), 785 F.2d 936, 941
(11th Cir. 1986) (cited in *LeMaire*, 898 F.2d at 1352 n.8).  By this
decision, the Court is doing just that, preserving the integrity of
the bankruptcy process by refusing to condone its abuse.

As noted above, the Court previously found Squires's Chapter
13 plan was not feasible.  For all the reasons discussed herein,
the Court finds, as an *additional* ground for denying confirmation,
Squires did not propose her plan in good faith.  The Court will
enter an appropriate order.

Sincerely,

Irvin N. Hoyt
Bankruptcy Judge

INH:sh

cc:  case file (docket original; serve copies on counsel)


On the above date, a copy of this document
was mailed or faxed to the parties shown on the
Notice of Electronic Filing as not having received
electronic notice and Debtor(s), if Debtor(s) did
not receive electronic notice.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota

NOTICE OF ENTRY
Under Fed.R.Bankr.P. 9022(a)

This order/judgment was entered
on the date shown above.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota